IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-8-RJ

EVELYN PRESCOTT,

        Plaintiff/Claimant,

v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,

        Defendant.

O R D E R

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-14, -16]. Claimant Evelyn Prescott ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. Claimant filed a response to Defendant's brief, [DE-17], the time for further responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court orders the case remanded to the Commissioner for further proceedings consistent with this Order.

**I. STATEMENT OF THE CASE**

Claimant protectively filed an application for SSI payments on October 19, 2020, alleging disability beginning October 19, 2020. (R. 188–94). Her claim was denied initially and upon reconsideration. (R. 61–76). A telephonic hearing before an Administrative Law Judge ("ALJ") was held on June 1, 2022, at which Claimant, represented by counsel, and a vocational

expert ("VE") appeared and testified. (R. 34–60). On June 10, 2022, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–33). After the Appeals Council denied Claimant's request for review, (R. 1–8), she then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920(a)(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 416.920(a)(c)(3). The ALJ is required to incorporate into her written decision pertinent findings and conclusions based on the "special technique." *Id.*

In this case, Claimant alleges that the ALJ erred by (1) failing to account for all her psychological limitations when determining her residual functional capacity ("RFC") and (2) crafting a decision that is internally inconsistent. Pl.'s Br. [DE-14] at 4–9.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the amended alleged onset date. (R. 19). Next, the ALJ determined Claimant had the severe impairments of depression, anxiety/social anxiety disorder, and agoraphobia, and that her vertigo was not a medically determinable impairment. (R. 19–20). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–21). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; marked limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that she had the ability to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [T]he claimant can occasionally interact with supervisors and coworkers and can have only incidental contact with the general public. The claimant can deal with infrequent changes in a routine work setting.

(R. 22–26). In making this assessment, the ALJ found that Claimant's statements about her limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 23). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a social service case aide. (R. 26–27). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform. (R.

4

27–28).

## V. DISCUSSION

Claimant's sole argument is that the ALJ erred by failing to consider her psychological inability to leave her house (agoraphobia) when formulating her RFC and crafting a decision that is internally inconsistent. Pl.'s Br. [DE-14] at 4–9. The Commissioner contends that substantial evidence supports the ALJ's RFC assessment, and that no further limitations are supported by the record. Def.'s Br. [DE-16] at 6–12. Without reweighing the evidence, the court agrees with Claimant.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

In the instant case, the ALJ found that Claimant can perform a full range of work at all exertional levels, with non-exertional limitations. (R. 22–26). When assessing Claimant's RFC, the ALJ summarized her June 2022 hearing testimony as follows:

> [S]he has not required in-patient treatment in the past 15 years. She takes medication when she has a panic attack. She tries to avoid panic attacks by not leaving the house or changing her routine. She believes she is unable to work due

5

to her panic attacks. Her medications calm her and relax her, but make her drowsy. She takes medication, but when she does, she is unable to drive. She does not go to the grocery store. She has not driven a car regularly in over two years and she has not seen her children or grandchildren in over two years.

On a typical day, the claimant reads and watches television. She has no ambition to do anything. She showers daily or every other day. She sometimes has difficulty with memory and concentration but is able to pay attention when she reads or watches television. The claimant also testified she depressed and has crying spells every day.

(R. 22–23). Ultimately, the ALJ determined that Claimant's statements regarding her limitations were inconsistent with the medical evidence and other evidence in the record. (R. 23). Specifically, the ALJ emphasized,

> The claimant's mental status has consistently been noted to be unremarkable during treatment, although notice has been taken that [all of Claimant's medical appointments] have not been in-person (Exhibits 1F, p. 7; 3F, p. 3; 5F, p. 3, 6). The claimant has reported continued difficulty going out in public despite medication, but also reported [at her medical appointments] that she was doing well and that her symptoms were in good control (Exhibit 5F, p. 4). The evidence does not support an extreme limitation in the claimant's overall mental functioning, but marked impairment in interacting with others is supported by the claimant's continued difficulty in leaving her house.

(R. 24).

As an initial matter, the ALJ's statement regarding Claimant's symptoms being "in good control" mischaracterizes the record. Claimant attended three telehealth appointments with her primary care provider (she does not see a psychiatrist for mental health care) in November 2020, June 2021, and February 2022 where treatment notes described her anxiety as being "in good control." (R. 301, 314, 317, 339). Critically, though, at each appointment, Claimant's doctor noted that her anxiety triggers include crowds or public places, and that her panic attacks *only occur when she goes into public places*, which is "infrequent." (R. 299, 312, 315). Claimant also testified at the June 2022 hearing that anything that disrupts her routine could trigger a panic

6

attack, (R. 45), and confirmed that she does not take her as-needed medication often because she avoids doing anything that would trigger a panic attack, (R. 47–50).

In other words, Claimant's medical records and testimony indicate that to the extent that Claimant's anxiety is in good control, that is largely because she does not leave her house. Presumably, Claimant would still experience anxiety and panic attacks if she were to venture outside her home or deviate from her daily routine and would have to rely more heavily on her medication, which causes significant side effects. (R. 48–49). The ALJ's decision does not account for these limitations, however, and instead cherrypicks the record by implying that Claimant's anxiety and agoraphobia have generally improved without any lifestyle modifications on her part. This is error. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of no disability while ignoring evidence that points to a disability finding.") (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *Lockerby v. Saul*, No. 1:19-cv-00159-MOC, 2020 WL 506752, at *3 (W.D.N.C. Jan. 30, 2020) ("An accurate and logical bridge must consider both favorable and unfavorable evidence").

The ALJ's most significant errors are those highlighted by Claimant: her failure to adequately address Claimant's agoraphobia in the RFC assessment, and the decision's internal inconsistencies. Pl.'s Br. [DE-14] at 4–9. As previously discussed, the ALJ acknowledged that Claimant has "experienced continued difficulty in leaving her house." (R. 24). The limitations caused by Claimant's agoraphobia have been substantiated by her statements to medical providers, her hearing testimony, her function report, and her roommate's third-party function report, (R. 45–50, 225–36, 249–60, 299, 312, 315), and as the Fourth Circuit held in *Shelley C. v. Comm'r of the SSA*, subjective statements from claimants "should be treated as evidence

7

*substantiating* the claimant's impairment." 61 F.4th 341, 360 (4th Cir. 2023) (citing *Arakas v. Comm'r of the SSA*, 983 F.3d 83, 97–98 (4th Cir. 2020)). This means that Claimant is entitled to solely rely on subjective statements to support her agoraphobia claims, and if the ALJ disregarded these claims—which does not appear to be the case—she should have explained why she did so, without simply citing a lack of objective medical evidence or the cherrypicked medical records previously discussed. *Id.* at 361–62.

Instead of providing an adequate explanation, though, the ALJ rather confusingly appears to credit Claimant's testimony regarding her agoraphobia, (R. 24), but makes no allowance for Claimant's psychological inability to leave her house in assessing her RFC. This inconsistency alone requires remand, as the court is unable to trace the ALJ's path of reasoning. *See Mascio*, 780 F.3d at 636. However, the omission is especially troubling because in *Shelley C.*, the Fourth Circuit stated, in pertinent part,

> Strikingly, . . . the ALJ disregarded a powerful segment of the vocational expert's testimony. When asked about a person with psychological impairments who would be off task from their job for more than an hour a day, in addition to regular breaks, and miss more than two days of work a month on a regular basis, the vocational expert vocalized that there were no such jobs in the national economy suitable for a person with such limitations. We are perplexed by the ALJ's dismissal of this significant testimony. Given Shelley C.'s daily routine, she cannot possibly be expected to attend, let alone perform, the jobs suggested.

*Shelley C.*, 61 F.4th at 368.

In the instant case, Claimant's potential time off task and absenteeism are likewise outcome-determinative for two reasons. First, at the June 2022 hearing, the VE testified that being off-task for ten percent or more of the eight-hour workday or missing two or more days of work per month would lead to termination of employment. Pl.'s Br. [DE-14] at 5 (citing (R. 57–58)). The VE also testified that an employee must be able to tolerate interaction with a supervisor

"once every 30 minutes or so" to sustain competitive employment, as well as working "in close proximity to coworkers." (R. 58). Second, at step five of the disability analysis, the ALJ identified three jobs that Claimant can perform given her age, education, work experience, and RFC: general cleaner, machine tender, and inspector. (R. 27–28).

Without reweighing the evidence, the VE's hearing testimony clearly indicates that showing up to work is a minimum requirement for sustaining competitive employment, and all three jobs identified by the ALJ are in-person positions. Thus, the ALJ's decision should have at least mentioned Claimant's potential time off task or absenteeism because both are likely to be impacted by her inability to leave her home or change her daily routine. *See Shelley C.*, 61 F.4th at 368. The decision addresses neither factor, though, frustrating meaningful review. As it is not the province of the court to weigh the evidence in the first instance, *see Mascio*, 780 F.3d at 636, remand is warranted for further consideration of this issue.

## VI. CONCLUSION

For the reasons stated above, the case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

So ordered, the __14__ day of March 2024.

Robert B. Jones, Jr.
United States Magistrate Judge